Welcome to the first division of the first district Illinois appellate court. We are here to hear oral arguments today via Zoom in the case of the people of the state of Illinois versus Dontreus M. Wilson. This is number 1-22-0032. My name is Terry Lavin and I'm going to be presiding today along with my colleagues Michael Hyman and Mary Ellen Coghlan. We are all familiar with the briefs and the record and are waiting to hear some argument from each of you. We're going to look in for 15 minutes a piece, save some time for rebuttal for the appellant and let's start off with hearing from the appellant. Jennifer Bontrager Thank you. Good afternoon, your honors, and may it please the court. I'm Jennifer Bontrager from the Office of the State began with a straightforward actual innocence claim and then the state added a second argument regarding the nullity rule. I had planned to start with the actual innocence claim, but of course I'm here for all of your honors questions. Michael Hyman Why don't you start with the jurisdictional issue? Jennifer Bontrager Sure. So the nullity rule is not immediately jurisdictional. So in this case, Mr. and Mrs. Wilson executed a valid power of attorney that gave Mrs. Wilson the power to sign and sign documents and initiate litigation on her husband's behalf. Are you suggesting that that someone can practice law if they're not a lawyer based on a POA? Of course not, your honor. And I don't believe Mrs. Wilson was attempting to practice law. She merely as she believed she had the authority to do. Michael Hyman Let me put it to you this way. Are you a party based on a power of attorney? Jennifer Bontrager No. And Mrs. Wilson did not appear in court on her husband's behalf. Michael Hyman File documents in a court case. Jennifer Bontrager I mean, the power of attorney and the power of attorney statute give the power of attorney give the agent holding the power of attorney authority to sign, will have authority to sign and deliver all instruments. And it allows her to initiate litigation on his behalf. Michael Hyman What about the last two sentences of that statute that you're relying on? Where it says the statutory short form power of attorney for property does not authorize the agent to appear in court or any tribunal as an attorney at law for the principal or otherwise to engage in the practice of law without being a licensed attorney who is authorized to practice law in Illinois under applicable Illinois Supreme Court rules. Jennifer Bontrager I'm saying that Mrs. Wilson did not do that. She did not appear in court. She never put herself out there as an attorney at law. She never attempted to, you know, file an appearance on his, you know, as if she were an attorney. She merely placed a, you know, signed her husband's name and placed a document in the mail. That is all that. And Michael Hyman Just be clear what you're saying. The documents that she placed her husband's name in her initials, she did not prepare those documents. Is that correct? That is correct. She did not do the research with regard to those documents. That's correct. Correct. She did not prepare the affidavits that were attached. Correct. She simply was given this information that was gathered by others under the supervision of attorney Redmond. Is that correct? It's not entirely clear to me what all information was gathered by the organization that the attorney Redmond was involved with and whether my client himself was able to prepare the documents and some of them and get them to his wife. The record is silent on exactly who did all of the typing involved in creating this petition. But you would agree that Wilson's wife did not prepare any of the documents? Correct. But how do we know that? That's not in the record. I mean, she merely signed and filed it, Your Honor. How do you know that? That's not in the record before. Isn't it in the record in the affidavit of Mr. Redmond and of the paralegal investigator? Yes, Your Honor. Those affidavits do discuss preparing at least parts of this and Wilson herself attested that she was doing this on her husband's behalf. You're aware that this is going on in other cases, right? There's a bit of a side hustle here where paralegals are working with inmates and trying to make some money on these post-conviction cases. I mean, I'm not aware of whether any money is being made. I am aware that investigators were assisting in putting up posters, trying to find people in the neighborhood willing to talk about this shooting, people who may have witnessed it, which all goes to the diligence in Mr. Wilson attempting to demonstrate his actual innocence. Just two of the 12 cases that I'm currently working on myself involve the same situation where there's a paralegal hustling business out of Joliet. I was not aware of anyone. John Greger, are you aware of the fact that your office in similar cases that are currently pending in the First District has taken a completely different position than what you're taking here this afternoon with us? I'm aware of at least some of the other pending cases, but I disagree that it's a contradictory position, Your Honor. That's because of this power of attorney. You think that that's the distinctive feature, I take it. I think the power of attorney is a distinctive feature, but I also think that it's about the purpose of the nullity rule, right? The purpose of the nullity rule is to protect the parties and the integrity of the court. In the other cases where we have sought to have the case remanded, those have involved situations where the petitioner, at least one case, did not even know that the petition had been filed on his behalf, and so he had not authorized it. To protect him and his interests and to not have it treated as an actual petition and therefore subject him later to having to hit the higher cause and prejudice bar, we agreed to have that sent back and those pleadings were stricken. Here, at most, what happened is an honest mistake, and so it seems unfair to apply to punish Mr. Wilson for asking his wife to file something on his behalf, believing that she was authorized to sign and file it on his behalf because they did execute this power of attorney. Isn't it true that the Illinois Supreme Court has ruled that there is no automatic nullity rule? Yes, Your Honor. That was a civil case where they made that ruling, and here we have a man's innocence at issue. Exactly, Your Honor. So what is the lesson from the cases that should be brought to bear in this situation with regard to the nullity rule? Well, basically, it's invoked to protect the parties and the integrity of the court, and here, as in some of the other cases like Pratt-Holden and Applebaum and Downtown Disposal, where there's an honest, at most, an honest mistake that happened, it's unfair to punish the parties. Do you think that it makes any difference that there's a constitutional right to counsel in a criminal case and these other cases are civil cases? I mean, there's not a constitutional right to counsel in a post-conviction proceeding because it's collateral. There's a statute of criminal case that involves criminal proceedings. You don't see that there's any distinction there? I don't, and I'm not aware of any case law drawing that distinction for application of the nullity rule. Are you aware of any criminal case where any court anywhere in the whole United States of America has ever held that a non-lawyer can represent the interests of a defendant? I'm not, and I would again say that Mrs. Wilson is not attempting to represent him, her husband. She is merely trying to do what she believed she was authorized to do under a power of attorney, which was to place a document in the mail. You know, a plain devil's advocate, what would stop some unsavory defendant, I'm not suggesting your client is, from down the line saying, oh, I never authorized so-and-so to file this pleading on my behalf. I didn't know anything about it. And isn't that a problem for the administration of justice? I mean, I think that's an issue for a different case, Your Honor, and I mean, that's what evidentiary hearings are for, to parse that out. If there is some indication that a defendant didn't authorize a filing. Well, and in that case, I mean, if the petition being filed is an innocence claim, the question is, and the defendant says, oh, I didn't file that. Well, okay. But here, that is not the issue, as you said. This is an innocence claim, and it would be, one of the factors that the Supreme Court has looked at is how harsh it is on the defendant. And if the nullity rule, if that's where we get to, is applied, what could be a more harsh result in somebody's incarceration when he or she is innocent? Exactly, Your Honor. And applying the nullity rule in this case would be unfairly harsh and, you know, would not even, you know, is not even in the interest of judicial economy. Because if this court does believe that the nullity rule needs to be applied, then at minimum, we would ask, you know, we would ask this court to order a limited remand to retain jurisdiction on that actual innocence claim, retain jurisdiction, remand for an expedited hearing. That might be a good opportunity here for you to go into that issue. Why don't you go to the actual innocence part of the case? Certainly, Your Honor. Certainly, yes. Mr. Wilson's petition set forth a colorable claim of actual innocence. He presented newly discovered evidence in the form of affidavits from four individuals who witnessed the shooting, and who are now willing to attest that Mr. Wilson was not the shooter. Two of them even identified by name the real offender, who is a violent local drug dealer who threatened everyone that night. They explained that they're only now willing to come forward with this information because they've been threatened, and they're still a little afraid. The affidavits are also material, which the state conceded, and they are conclusive, as they directly contradict the state's evidence at trial. So, for that reason, Mr. Wilson's petition should advance to the second stage. Isn't it a little suspect that two of the affidavits are absolutely identical? I mean, I think that's a credibility determination that can only be made at an evidentiary hearing, Your Honor. And what about the fact that his brother did not testify at trial, and he's one of the affidavits that we're supposed to take into account here? Sure, Your Honor. Robert Wilson, the trouble with that is that we don't know what he was supposed to testify about, or what he was willing to testify about at trial. But he does attest now, and we have to take his affidavit as true at this stage. He does now attest that he is willing to testify that Michael Groves, this other violent local drug dealer, was the real offender. He threatened to kill anyone who mentioned his name to police, and he told everyone to blame Dontreus Wilson instead, and that they could keep heroin that they had stolen from him. So, wasn't he in the lockup at the trial, and didn't the defendant himself say he did not want him to testify? Correct, Your Honor. But we don't know why that was, and we don't know if that was because... Well, your client knew why it was. He's the one that didn't want him to testify. Right, but we don't know why he didn't want him to testify, and that's what an evidentiary hearing would get to, to resolve any of those questions that might surround that. And regardless, I mean, even discounting Robert Wilson's affidavit, we have three other affidavits saying that Dontreus Wilson is not the shooter, and that someone else, it was this violent local drug dealer who was threatening everyone. With regard to not knowing what the reason was for him not having his brother testify, I mean, it could be that he knew about the death threats, and he didn't want to see his brother testify. There are a lot of reasons we can speculate, but that isn't what we're supposed to do at this juncture. Exactly, Your Honor. And is this person still alive? Is he on the street? Is he in jail? I searched recently and did not find Mr. Groves. I simply can't answer that question with any certainty, Your Honor. Did you check DOC, or you just talked about online? I did check DOC. But I also, I mean, that's not necessarily an uncommon name, so it wouldn't necessarily be the same person. So I'm sorry, I can't give Your Honor any additional details than that. No problem. But in any event, the affidavits are conclusive in that they directly contradict the state's evidence at trial. Okay, well, let me ask you one final question. Assuming that the success of PC was improperly filed, what would the appropriate remedy be here? If Your Honors do apply the nullity rule, I would ask you to retain jurisdiction on the actual innocence claim and to order a limited remand on the question of whether my client did authorize the petition and order that there be an expedited hearing to answer that question so that hopefully the plea, you know, so that my client can come into court and say, I absolutely authorized this, I want this to go forward, and we can then come back up and Your Honors can address the actual innocence question. Do we really need to do that? Is that what you want us to do? No, I want Your Honors to advance this case to the second stage of post-conviction proceedings. Well, in answer to Justice Lavin's question, tell us why it wouldn't make any sense to send it down. I mean, isn't that a waste? We have a man who may be innocent, and what we're going to do is delay it for months, if not another year, just because we have a power attorney and all this other thing. We know she didn't prepare it. We know that he went to a lawyer involved here and paralegals and so forth. All this information is there. Why would we want to send it down? I mean, that's what he asked you, what do you want here? And you said, send it back. And if that's, I'm sorry, no, I must have misunderstood Justice Lavin's question. I understood him to be asking what should happen if Your Honors do apply the Nullity Rule. You're correct. That's fine. That's fine. I understand that you don't want to do that. Okay. No, no. What about the Post-Conviction Hearing Act itself? I mean, specifically, what does it say in 5-122-1, subparagraph A, any person imprisoned in the person asserts that, one, in the proceedings which resulted in his or her conviction, there was substantial denial of his or her rights in the Constitution of the United States or the State of Illinois. Fundamentally, just on the black letter law of the post-conviction statute, you have his wife, you know, filing this. You have a paralegal, you know, hustling up to get affidavits, some of which match. It doesn't even fit the simplest, most basic language of the post-conviction statute. Well, I think it's as close as we can get, actually, Your Honor, because, you know, Mrs. Wilson signed and filed it on her husband's behalf. He is the inmate in question. She was acting as his agent. So I don't think that nullifies, I simply don't think that that nullifies, where she's acting with a valid power of attorney in place, then, you know, imposing the nullity rule here is harsh and is not in the, you know, is not in judicial economy. Well, doesn't this actually comply with that rule? I mean, somebody is incarcerated. They can't go out into the neighborhood and try to get information. So usually we see affidavits from other inmates sometimes. Sure. And don't we also see jailhouse lawyers who are just inmates with a lot of intelligence with regard to these matters and their experience who write these type of petitions? You've seen that before. Certainly, Your Honor. And here we have a lawyer who has an affidavit that said he supervised what happened here. Isn't that correct? Yes, Your Honor. I mean, he supervised at least some of them. The only thing that his wife did was she signed his name, not her name, his name and put her initials, which is the proper way to do that. And considering that he's incarcerated, is that something that should be given? I mean, Justice Coughlin's fear is what's this going to do? What is the horror? Is there any horror here that would result from having somebody sign your name, simply sign your results for the enemy? What would be the result for the? I mean, when I don't see a problem in, you know, an individual who's incarcerated, having some giving someone power of attorney for him to allow them to file a document on his behalf to try to help him prove his innocence and get out of prison. I don't see a harm in that. And I don't see it as a slippery slope either. Again, you know, assuming that there's a valid power of attorney in place, which is exactly what we have here. Okay. Um, let's hear from the Eppley. Thank you. Thank you. Uh, good afternoon, your honors. Good afternoon. Counsel Douglas Harbath on behalf of the people of the state of Illinois. I just point out at the beginning that Ms. Barron Wilson is on this, uh, she's present for this, uh, oral argument. And I, as I pointed out, we point out in a brief, there's no allegation of nefarious or unscrupulous behavior whatsoever. She's obviously well-intentioned. She loves her husband and she's trying to do right by him, but that's beside the point. This court has to make a threshold jurisdictional, it has a duty and an obligation to establish its own jurisdiction because all the pleadings, well-intentioned and, and is, is, uh, you know, a loving gesture on behalf of his wife. Uh, she filed, she did file and the defense has not, uh, in response to your questions, justice Hyman has not even disputed that she filed them. She just, she didn't simply initial them and stick them in the mail. She signed at least two or three of the affidavits. She signed the motion for leave to file. She signed the affidavits. I mean, they were saying, please expand that. She initialed them. She initialed them. Every patient in this record that she prepared all of this and she initialed it with her, her own initials. Isn't that contrary to the affidavits, uh, and what Mr. Horton said and what the attorney Redmond said? Mr. Redmond. And I need to clarify the record. There's nothing in Mr. Redmond, the attorney's affidavit that says he did anything in this case. It's just a generic, uh, affidavit. No, no docket number or anything. Just say that he supervises these individuals and that he, in all candor, he sends them to court to present evidence on his behalf, which is facilitating the because these are null and they'll rule of nullity is it is a strict rule. And I understand, and I'll get back to this later as to why there's, there's one exception that I've been able to come across in my entire research. And I've been living and breathing this case for some time is the corporate officers exception where you can literally cure the defect for a complaint that is filed by a corporate officer who may happen to be, she may just be the CEO of the company, but that's easily cured on the, when it's given a court date and the attorney representing the company or the general counsel or the law firm signs all those documents. So there's no other exception. That's a civil case. And you're saying the post-conviction hearing act that you're talking about. Yes. But this is a man, this isn't a corporation. This is a man who's imprisoned and has said he's innocent. And so the state's position is that the law is to treat someone who may be innocent and is sitting in prison for years and can't get out and can't do the research that's necessary. And in this situation with a power attorney, you're saying that's no good. He's got to start over. Is that, that's the state's position that, that this man, that's, you say that's not harsh. Is that right? I honestly, I'm a judge. I don't know how to answer that question. It's a very loaded question. I'll ask it again. I mean, the power of attorney act itself says that agents cannot litigate on behalf. She's not litigating. She's not litigating. The practice of law. And this is the practice of law includes the preparation of documents and evidence and pleadings, counseling and advising. It's a very broad definition at a very minimum. She did two or three of those. Who filed the first post-conviction petition in this case? The defendant himself. Yeah. He had the wherewithal to file his initial petition. And that points to that the problem in, you know, the defense. There's a right way and there's a wrong way. And in this circumstance, the defendant himself filed the first one correctly, right? That's my understanding. Yes. There was no indication that there was any involvement of paralegal or Ms. Barron Wilson. And was that an innocence claim? I don't believe so, Judge. I think it was the first successive was his first claim of actual innocence. This is a claim. There's a lot of different things that you need to do. And again, you have to get the affidavits. Now it's very hard to do that and get people to come forward, particularly when they were threatened. I mean, that's what I'm not suggesting. I would never suggest that an incarcerated individual is precluded from getting the assistance of anyone, including non-lawyers, jailhouse attorneys, their family members, friends, anyone. They just can't litigate on their behalf. They can't prepare evidence and they can't sign the pleadings. There is no harsh result here. All the defendant had to do is wait a minute. She has a valid power of attorney. You've said that, right? Okay. So it's a valid power of attorney. Yeah. Right. And it's in the record and you've agreed that you're not saying it's not a valid power of attorney. If she has a power of attorney, that gives a power to file things. She never filed an appearance. Where's that in the record? It doesn't have to be in the- How about the spousal exception? Can you find one of those for us? I'm not answering your question. If you're asking counsel, let him answer. No, I'm asking counsel. I'll be happy to answer the question. It's not there. Judge, I think your own position on this is clear as it is can't be reconciled with your own dissent in the Matson case, where that individual was trying to seek appointment as an administrator for his mother's estate. And this court, with your honor dissenting, found that because he was representing himself as to be administrator, he was not engaging in the unauthorized practice of law. The majority found that it wasn't on behalf of the state and not himself. But in that case, your honor's own words, the Matson case, where you cite Blue and you cite the Ford Motor Company and Radcliffe, the reason that the minor who lacks the capacity to represent himself should have the protection and expertise of an attorney. Well, shouldn't an inmate incarcerated in the Department of Corrections for decades have the same protection? And again, I'm not saying this Barron Wilson is doing anything unethical whatsoever. There is a problem with injecting chaos in the post-conviction process. But your question is- What if the defendant, if the court can indulge me in asking your honor a question, would your logic extend to 21401s, to section 116.3 petitions, to state habeas petitions, to section 14-101 petitions for habeas? Let's talk about what we're talking about. Let's talk about this petition. Why would you draw the line? Counsel, please. You know that these petitions are to be prepared by the defendant without counsel. Is that correct? Well, they- Is that right? Is that right? They don't have lawyers. They usually- They're not guaranteed counsel. Is that correct? Absolutely. Okay. So let's say- It only applies to incarcerated individuals. Right. Okay. They're incarcerated and they can do things themselves. So we know- You disagree, but all she did was sign his name and send the papers in and put his- I disagree with you. I don't accept that. We can debate what the affidavits say. I don't think the defense in her brief even disputed that she did far more than that. I don't- All right. Well, tell me what she did. Tell me what she did. Tell me what she did. Well, at one point in the reply brief, it was possibly an honest mistake. What is an honest mistake? Well, I guess maybe that's a better question for counsel in her rebuttal. I'm asking you. You're the one who made the statement. You made the statement. I'm asking you. The defendant's position has always been from the motion for semi-disposition in her brief is that the power of attorney was her get-out-of-jail-free card. Nothing more. She was allowed to do all these things, including do the pleadings and filings, and basically act as an attorney at law. Wait. Again, I think you're overstating what she did. I guess that's what you're arguing. You're arguing that she did prepare the pleadings? Counsel just told me when I asked the same question, she did not. So you're saying something else. Tell me how you can say these questions. What's the basis for you disagreeing with what counsel said? I'm looking at the petition right now with all the affidavits, and there are several that are signed by ADW, including the petition itself. Are they signed? Are they initialed? Let's see. They're signed by somebody else, aren't they? There's nothing in here saying that Eugene Horton prepared these defendants. It doesn't say she prepared them, does it? Does it say that? Yes or no? Are we talking about the affidavits that are initialed with the same initials of his wife? Is that what we're talking about? What initials are we talking about, Mr. Harvath? I'm a little confused. So whenever she signs the defendant's name, she in parentheses puts ADW, which is Angela Barron Wilson, his spouse. So there is at least the belief that she was doing that in the affidavits. So at the record at C-225, it's the leave to file a successive petition, and it's typewritten, and then it's signed defendant with ADW initial. That tells me only one thing, that Angela Barron Wilson prepared it and signed it on his behalf. It doesn't tell you that at all. She signed his name and she had a power of attorney to do so. That's not what you were talking about. You didn't answer my question yet, okay? My question was, you said there were initials on other pages, right? Her initials, I asked you, were those pages that she say that she prepared those pages? Is there anything to indicate that she prepared those pages other than initialed it? Yes or no? I don't see that. You don't see what? I don't see that, but guess what it also doesn't show? Answer it. You said I don't see that. What don't you see? I do not see Angela Barron Wilson express the state that she typed all this and printed it out. Is that what you're asking me? I'm asking you whether she prepared it. You said she might have prepared it, and she initialed it. The fact that somebody's initials on every page, that happens in all sorts of contracts, real estate, wills, and estates, and so forth. That doesn't mean the person prepared it, does it? Does it? Yes or no? I've already answered. I bet. No, I'm asking you now. That's my question. Please answer my question. Yes or no? The fact that somebody initials something, does that mean he or she prepared it? No, but she's the one that's put it in the mail and caused it to be filed. Okay, so she put it in the mail and caused it to be filed. It came from IDOC. Okay, and who puts it in the mail when it goes to a prison? It doesn't have to go to somebody in the prison, and the person in the prison puts it in the mail, the person who works the prison system? Yeah. Okay. And in those cases, the defendant is the one who's signing the petition, right? In jail? That would be, that's a 99% of the cases, although we are seeing an influx. That's a typical scenario, but now we're seeing a new movement, you know, some side hustle. Well, and I hasten to point out that this has been happening for the better part of a decade, and again, these are not people that are up to no good. I'm not saying that whatsoever. I'm saying there needs to be, the law loves black letter law, excuse me, bright line rules, and if we need a bright line rule, this type of case screams for it, because what if this was the initial petition, and then it was void, and it appears that in this case, his prior petition was actually filed, just like this one, by his wife. That was already a successive petition, but this court well knows the importance, procedural hurdles for successive petitions, so what if the first one was actually deemed null, and several decisions, and this court issued a decision in that 2017 case, I believe it was 2017, so ostensibly, that would be deemed null, or at least it's arguably that that's null. You can do a lot of speculation, but speculation is not what we're going to decide this case in, and bright line rules usually are not so good when it said in a civil case, we don't want bright line rules, so you're saying that in a civil case, it's okay, but in a criminal case, when it's somebody's freedom and liberty, that doesn't count. A power of attorney is no good, and even though it's only the defendant who can do anything, is that what you're saying? Your honor, if your honor would like to there's a liberty interest there. If your honor would like to create it, carve out an exception for criminal cases, or post-convictions, with respect to your honor, you do not have the authority to do that, because the supreme court has the sole and exclusive prerogative to regulate and define the practice of law. But that's not what I said. You're not listening. The supreme court said it's a harsh result. Now you're saying this is not a harsh result. Please explain. It's not harsh. He could just refile it under his own name. How is that harsh? You're sitting in prison, and somebody just files it. It can't be corrected on the second stage. Is that true? Are you saying it can't be corrected in the second city? Absolutely not, because then it would be giving legal effect to all the petitions that are void at their inception. Absolutely. No, but we said it was harsh. It could, under the law of the state of Illinois, things would be corrected at the second stage, correct? I'll point your honor to the Dunson case, where the probation officer signed a VOP, and this court held that it operates to void the judgment, even where a lay agent merely files a complaint under his own signature, and all subsequent appearances are made by a duly licensed attorney. That's true, but that's not what we're talking about. Let's talk about what we're talking about. Do you have a case where you had a power of attorney? You said you looked at every jurisdiction in the country. Can't find one with a power of attorney in this situation? I found out several cases, and I cited that unpublished case, which itself... We can't talk about the unpublished cases. I mean, is there a reason we shouldn't strike that and sanction you? Go ahead and strike it, then. Fine, fine. You can strike it. Okay, we can strike it. You agree we can strike it. Okay, but let's not talk about those cases. You can strike all the other cases, and everything with a U next to it, but that goes to my point that this court should issue a decision and set the matter straight on this, so there's some guidance to litigants and trial courts. I think you're right. I mean, I agree with you. Okay, well, there's an agreement. Maybe we can move on to rebuttal, then. Counsel? Rebuttal? Yes, Your Honor. Just a few points. First, regarding the state's assertion that he only found cases involving a corporate officer exception to nullity rule, there are cases that don't involve a corporate officer. Pat Holden involved an estate administrator. Harris involved a daughter who held power of attorney who initiated proceedings against the Department of Human Services on her mother's behalf. Applebaum was an attorney who was on inactive status and not authorized to file, so there is more than just a corporate officer exception to the nullity rule. Two, as Justice Hyman pointed out, technical defects can be corrected, like the lack of a verification of an affidavit. This is really no different than that. If your honors find that it's an error at all, it is a technical defect, and Mr. Wilson should be allowed to fix that at the second stage. Finally, to Your Honor's concerns about this being jurisdictional, this court in downtown disposal held that de minimis participation by a non-attorney, which is exactly what we have here, de minimis participation by Mrs. Wilson, is not jurisdictional in nature. Well, the counsel's arguing that it was more than de minimis. He says that there's no indication that she didn't prepare some of these papers. I vehemently disagree. Mrs. Wilson's initials only appear where she signs her husband's name on form documents, like a motion for leave to file. That's a form document that's available in nearly any correctional institution. There is simply no indication that she prepared any of the other documents in this case. Her initials appear only where she signed her husband's name. But we would not be hearing this argument today if she had given these documents to her husband while he was in prison and had him sign this. This would not be an issue, right? Correct. I mean, that's what it comes down to. It may seem unfair. It may seem unfortunate. It may raise somebody's blood pressure. But if it was done that way, like he did the first petition where he signed it himself, we wouldn't be here talking about jurisdiction, would we? No, that's true. Even if she initialed and witnessed and whatever. Right. But I think resorting to assigning her power of attorney, creating that power of attorney, I think that speaks to my client's desperation in trying to get his actual innocence claim before this court because of troubles getting documents filed and troubles getting documents out of state bill in particular where he was at that time. I think it simply speaks to desperation and a desire to get this to get his claims before the court. All right. Thank you. We will take the matter under advisement. Thank you for your briefs and for your argument. And as I like to say, both of your offices show a lot of commitment, a lot of professionalism, and you know how to maintain an even footing even under some pretty good cross examination at oral argument time. So thank you all. And we will take the matter under advisement.